lml

# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **GOVERNOR OF THE STATE** ) | |
| **OF KANSAS, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 03-4140-JAR** |
| ) | |
| **GALE NORTON, SECRETARY OF** ) | |
| **THE INTERIOR, et al,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## ORDER REMANDING PROCEEDINGS
## TO SUPPLEMENT ADMINISTRATIVE RECORD

This case concerns the decision of the Secretary of the Interior (the "Secretary") to take .52 acres of land (the "Shriner Tract") into trust on behalf of the Wyandotte Indian Tribe of Oklahoma ("the Tribe"), purportedly under the mandate of Pub. L. 98-602. Plaintiffs ask this Court to reverse the decision of the Secretary to take the Shriner Tract into trust for the Tribe, arguing that defendant acted in an arbitrary and capricious fashion by failing to scrutinize whether Pub. L. 98-602 funds were used to purchase the Shriner Tract. For the following reasons, the Court determines that the proceedings should be remanded to the federal agency for the limited purpose of consideration of supplemental evidence as set forth in plaintiffs' Exhibit B.

## I.      Background

This long-pending litigation arose from the Tribe's efforts to take a tract of land in Kansas City, Wyandotte County, Kansas ("the Shriner Tract") into trust on behalf of the Tribe, purportedly under

the mandate of Pub. L. 98-602, as part of its plan to conduct gaming in Kansas City, Kansas.  In 1984, Congress enacted legislation providing for the appropriation and distribution of money in satisfaction of judgments awarded to the Tribe by the Indian Claims Commission ("ICC") and the Court of Claims.[1] Key to this case was the directive that "[a] sum of $100,000 of such funds shall be used for the purchase of real property which shall be held in trust by the Secretary for the benefit of such Tribe."[2]

The National Indian Gaming Commission ("NIGC") Chairman approved the Tribe's gaming ordinance in June 1994.  The approved ordinance is not site specific.  In 1996, the Tribe requested that the Secretary take the Shriner Tract into trust on its behalf.  The Tribe intended to purchase the Shriner Tract with the ICC funds and contended that the statute mandated that property purchased with such funds be taken into trust by the Secretary.[3]

On July 12, 1996, the last day of the comment period,[4] then-Governor Bill Graves, the Sac and Fox Nation of Missouri, Iowa Tribe of Kansas and Nebraska, and Prairie Band of Potawatomi Indians filed an action challenging the Secretary's decision to accept the Shriner Tract into trust, and that same day, obtained a temporary injunction preventing the trust acquisition.[5]  The plaintiffs therein argued that the Secretary's decision to accept the Shriner Tract into trust was in error because: (1) the Secretary was not mandated under Pub. L. 98-602 to accept the Shriner Tract; (2) the Secretary acted in an

---

[1]*See* Pub. L. 98-602, 98 Stat. 3149 (1984).

[2]98 Stat. 3151 (1984).

[3]*See* 98 Stat. 3149, 3151 (1984).

[4]25 C.F.R. § 151.12(b).

[5]*Sac and Fox Nation of Missouri v. Babbitt,* 92 F. Supp. 2d 1124, 1125 (D. Kan. 2000).

arbitrary and capricious manner when analyzing whether Pub. L. 98-602 funds were used to purchase the Shriner Tract; and (3) the Secretary failed to comply with the National Environmental Policy Act of 1969 ("NEPA"),[6] and the National Historic Preservation Act ("NHPA")[7] when accepting the Shriner Tract into trust.[8]

The Tribe moved to intervene and took an emergency appeal to the Tenth Circuit Court of Appeals.  The Tribe asserted that if it was not able to close the land purchase immediately, it would lose the opportunity to purchase the land.[9]  The Tenth Circuit vacated the injunction and the same day, the Secretary accepted the Shriner Tract into trust for the benefit of the Tribe.[10]  In so ruling, the court specifically held that the respective rights of the parties to obtain judicial review of all issues raised shall be preserved.[11]

The matter was remanded to the district court, which dismissed the complaint for failure to join an indispensable party, the Tribe.[12]  While the district court did not rule on the merits of the case, it did note that had it been required to address the merits, the court would have ruled that Pub. L. 98-602 was a mandatory trust acquisition statute, and that the non-discretionary nature of the decision

---

[6]42 U.S.C. § 4321.

[7]16 U.S.C. § 470.

[8]*Sac and Fox v. Babbitt,* 92 F. Supp. 2d at 1128-29.

[9]*See Sac and Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1257 (10th Cir. 2001).

[10]*Id.*

[11]*Id.*

[12]*Sac and Fox v. Babbitt,* 92 F. Supp. 2d at 1124.

3

exempted it from the application of both NEPA and NHPA.[13]

The state plaintiffs appealed the district court's dismissal to the Tenth Circuit.  On appeal, the Circuit rejected the district court's analysis under Fed. R. Civ. P. 19, finding that the United States was able to adequately represent the Tribe's interests in the case.[14]  The court affirmed the district court's conclusion that Pub. L. 98-602 is a mandatory trust acquisition statute, that the Secretary had no discretion in accepting title to the Shriner Tract in trust for the Tribe, and that neither NEPA nor NHPA analysis were required for the non-discretionary decision to take the property into trust.[15]  However, the Tenth Circuit concluded that the Secretary's determination that only Pub. L. 98-602 funds were used to purchase the Shriner Tract was not supported by substantial evidence in the record.[16]  The court noted that the documents in the record suggested that nearly half of the funds used to acquire the Shriner Tract were non-Pub. L. 98-602 funds, specifically the April 12, 1995 resolution of the Tribe, an April 19, 1996 letter from the Tribe to the Bureau of Indian Affairs ("BIA") outlining its plan for purchasing the Shriner Tract, and an email message from one BIA employee to another suggesting that some agency employees were aware that the Pub. L. 98-602 funds remaining and available would  not cover the entire purchase price.[17]  Accordingly, the court remanded the case to the district court with instructions for the court to order the Secretary to further consider the question of whether only Pub. L.

---

[13]*Id.* at 1128.

[14]*Sac and Fox v. Norton,* 240 F. 3d at 1262.

[15]*Id.* at 1261-63.

[16]*Id.* at 1263-64.

[17]*Id.*

98-602 funds were used for the acquisition.[18]  On remand, the district court remanded the case to the

Secretary "to reconsider whether Pub. L. 98-602 funds alone were used to purchase the Shriner Tract

in connection with the decision to approve taking the Shriner Tract into trust for [the Tribe]."[19]

On March 11, 2002, the Secretary issued her decision following remand, and published in the

*Federal Register* the determination that "funds used to purchase the Shriner property in Kansas City,

Kansas were from the Section 602 settlement on specific land claims."  Defendants then "affirmed the

trust status of the subject lands."  The State requested reconsideration of the determination, and the

parties were permitted to brief the issues.  The Secretary issued an Opinion on Reconsideration on June

12, 2002, affirming that the Shriner Tract was purchased with Pub. L. 98-602 funds and that it was

validly taken into trust by the Secretary.  This determination was based, in part, on an analysis by

KMPG, an accounting firm hired by the Tribe to analyze the value of the Pub. L. 98-602 funds in July

1996.  After supplying KMPG with financial records, it issued its findings to the Tribe, finding that the

original $100,000 issued to the Tribe as part of the 1984 statute amounted to $212,170 at the time the

Tribe purchased the Shriner Tract.  The State disputed the accuracy and legitimacy of the KMPG

findings.  This dispute was addressed by a financial analyst in the Office of Indian Gaming Management.

After reviewing the KMPG findings, the analyst determined: (1)  KMPG used an "appropriate and

accepted methodology;" (2) contrary to plaintiffs' assertion, "[t]here is no evidence in the documents

analyzed by the Department that the P.L. 98-602 funds lost money," however, it is true that the money

was invested and commingled; (3) contrary to plaintiffs' assertion, the Administrative Record shows

---

[18]*Id.* at 1264.

[19]*Sac and Fox Nation v. Norton,* No. 96-CV-4129 (D. Kan. Aug. 22, 2001).

5

that the property was purchased for $180,000, not $325,000; and (4) based on KMPG's analysis, there was ample money to purchase the Shriner Tract.

On July 11, 2003, the State of Kansas, *et al.,* filed its Complaint for Declaratory and Injunctive Relief, Mandamus and Review of Final Agency Action, challenging as arbitrary and capricious the Secretary's determination to accept the Shriner Tract into trust for the benefit of the Tribe.  The State seeks to have the taking of the Shriner Tract into trust declared as void *ab initio*.

## II.     Standard of Review

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."[20]  The "ultimate standard of review is a narrow one."[21]

The APA authorizes the reviewing court to "compel agency action unlawfully withheld" and to "hold unlawful and set aside agency actions, findings, and conclusions" that the court finds to be, as plaintiffs allege here, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[22]  Under an APA review, "'an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'"[23]  The Tenth Circuit has identified the "essential function" of agency review as an analysis of the following: "(1) whether the agency acted within the scope of its authority, (2) whether the

---

[20]5 U.S.C. § 702.

[21]*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

[22]5 U.S.C. §§ 706(1), 706(2)(A); *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1573-75 (10th Cir. 1994).

[23]*Olenhouse*, 42 F.3d at 1575 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 50 (1983)).

agency complied with prescribed procedures, and (3) whether the action is otherwise arbitrary, capricious or an abuse of discretion."[24]

"'The duty of a court reviewing agency action under the 'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made.'"[25]  The reviewing court must decide "'whether the agency considered all relevant factors and whether there has been a clear error of judgment.'"[26]  "In addition to requiring a reasoned basis for agency action, the 'arbitrary or capricious' standard requires an agency's action to be supported by the facts in the record."[27]  Thus, agency action will be set aside as arbitrary unless it is supported by "substantial evidence" in the administrative record.[28]  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[29]  "This is something more than a mere scintilla but something less than the weight of the evidence."[30]  "Evidence is generally substantial under the APA if it is enough to justify, if the trial were to a jury, refusal to direct a verdict on a factual conclusion."[31]

---

[24]*Id*. at 1574 (citations omitted).

[25]*Cliffs Synfuel Corp. v. Norton*, 291 F.3d 1250, 1257 (10th Cir. 2002) (quoting *Olenhouse*, 42 F.3d at 1574 (footnote omitted)).

[26]*Id*. (quoting *IMC Kalium Carlsbad, Inc. v. Interior Bd. of Land Appeals*, 206 F.3d 1003, 1012 (10th Cir. 2000)) (further quotation omitted).

[27]*Olenhouse*, 42 F.3d at 1575.

[28]*Pennaco Energy, Inc. v. United States Dep't of Interior*, 377 F.3d 1147, 1156 (10th Cir. 2004) (citing *Olenhouse*, 43 F.3d at 1575).

[29]*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation omitted).

[30]*Foust v. Lujan*, 942 F.2d 712, 714 (10th Cir. 1991) (discussing "substantial evidence" standard).

[31]*Hoyl v. Babbitt*, 129 F.3d 1377, 1383 (10th Cir. 1997).

**III.**     **Request for Judicial Notice and/or Augmentation of Administrative Record**

Plaintiffs filed a motion for leave to conduct discovery and to supplement the Administrative Record (Doc. 29).  Magistrate Judge O'Hara denied plaintiffs' motion to conduct discovery and, to the extent it seeks to supplement the administrative record, denied without prejudice as to whatever ruling this Court might deem appropriate when it rules on the merits (Doc. 38).  Plaintiffs' objection to Judge O'Hara's Order (Doc. 39), was overruled and denied by this Court (Doc. 41).

Plaintiffs continue to urge the Court to take into account two documents that were not included in the administrative record filed herein.  The first document, attached as Exhibit A to plaintiffs' brief, is correspondence from Brian Johnson, a former Assistant Attorney General for the State of Kansas, to John Jasper, counsel for the Department of Interior.  The letter is a request for authority to conduct discovery during the administrative stage of the agency's decision-making process; this request was denied.  Defendants have no objection to inclusion of Exhibit A in the administrative record as it was received by the Department of Interior and considered by the agency in deciding whether to allow discovery at the administrative stage.  Defendants deny, however, any suggestion that this letter was purposely withheld from the administrative record.

The second document that plaintiffs request the Court to include in the administrative record is Exhibit B to plaintiffs' brief, a copy of a letter dated October 12, 1995, addressed to Guarantee Title Company and a copy of a $5,000 check purportedly drawn on the account of North American Sports Management (NORAM) as the initial escrow deposit required in the real estate contract for the purchase of the Shriner Tract.  Alternatively, plaintiffs request this matter be remanded to allow defendants to take this document into account.  Defendants continue to object to plaintiffs' attempt to

supplement the administrative record with this document, which they contend was never before the agency for consideration and thus cannot now be made part of the administrative record.

Under the APA, a reviewing court must rely on the administrative record to assess the validity of the agency action.[32]  The court's review of matters based upon the administrative record is generally confined to "the administrative record already in existence, not some new record made initially in the reviewing court."[33]  The Supreme Court held in *Florida Power & Light Co. v. Lorion*,[34]

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.  The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.[35]

Plaintiffs have not demonstrated any exceptional circumstances justifying supplementing the administrative record in these judicial proceedings.[36]  Nonetheless, it appears to the Court that Exhibit B will be of assistance in determining whether or not the Secretary's decision was arbitrary and

---

[32]*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-33 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

[33]*Camp*, 411 U.S. at 142.

[34]470 U.S. at 729.

[35]*Id*. at 744.

[36]Courts have allowed parties to supplement the agency record where: (1) the agency knew of an important matter that was unavailable to a party; (2) the agency relied on some important but secret information that was not part of the record; (3) the court needs expert testimony to help it understand matters in the agency record or needs additional factual evidence to aid its understanding; or (4) the agency engaged in bad faith or other improper behavior that warrants supplementing the record. *See Town of Norfolk v. United States Army Corps of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992).

capricious under the APA, particularly in light of the Tenth Circuit's directive on remand to further consider the question of whether only Pub. L. 98-602 funds were used for the acquisition.[37]  The letter of October 12, 1995 from Karbank to Guarantee Title Company coupled with the $5000 check appear to be material and directly relevant to the issue on remand.  This check is drawn on NORAM, payable to Guarantee Title Company, and includes a notation that it is for the Shriner building. Accordingly, the Court remands the case to the agency for the limited purpose of additional investigation or explanation of the supplemental evidence set forth in plaintiffs' Exhibit B.[38]  The Court's order overruling the objection to the Magistrate Judge's order denying defendants' request for discovery shall remain in effect.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is remanded to defendants to permit plaintiffs to supplement the administrative record; the scope of remand shall be limited to additional investigation or explanation of the supplemental evidence set forth in plaintiff's Exhibit B hereto.  The Court directs defendants to submit the results on remand to this Court within sixty (60) days of the date of this order.  The Court will advise the parties whether additional briefing is required.

**IT IS SO ORDERED.**

Dated this  27th  day of July 2005

S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[37] *Sac and Fox v. Norton*, 240 F. 3d at 1264.

[38]*See Lorion*, 470 U.S. at 744; *accord Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 594 (1980).

10

.